AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of South Carolina

In the Matter of the Search of ) )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 2°19-cr-665
)
4209 Kelly Street, Unit A )
North Charleston, South Carolina )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the _____ District of _____South Carolina_____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B and Attachment C

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841 | PWID Controlled Substance |
| 21 USC 846 | Conspiracy |

The application is based on these facts:
See Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jason Jarrell, DEA Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___July 23, 2019___

_____
*Judge's signature*

City and state: ___Charleston, South Carolina___

Bristow Marchant, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

IN THE MATTER OF THE APPLICATION OF THE          )
UNITED STATES OF AMERICA FOR AN ORDER            )
AUTHORIZING A DOCUMENTARY SEARCH                 )    MISC NO.  2:19-cr-665
WARRANT FOR THE RESIDENCES LOCATED AT:           )
                                                 )
**4209 Kelly Street, Unit A, North Charleston, SC**    )    **UNDER SEAL**
**24 Mary Street, Charleston, SC**               )

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR SEARCH WARRANTS

I, JASON JARRELL, a Task Force Officer with the DEA Task Force, being duly sworn,

declare and state:

1.    I am an investigative or law enforcement officer of the United States within the

meaning of 18 U.S.C. § 2510(7)—that is, an officer of the United States who is empowered by law

to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.  I

am a Task Force Officer with the Drug Enforcement Administration, and have been since July of

2017.  I, Jason Jarrell, have been a law enforcement officer since August of 2007. Before being

assigned to the Charleston DEA Task Force, I was assigned to the Charleston Police Department's

Robbery Unit and then Homicide Unit as a detective.  Since becoming a TFO with the DEA I

have primarily conducted investigations involving the illegal importation and distribution of drugs,

and weapon and money laundering violations and, among other things, have conducted or

participated in surveillance, the execution of search warrants, debriefings of informants, reviews

of recorded conversations, and have conducted or participated in investigations that included the

interception of electronic communications.

2.    Through my training, education and experience, I have become familiar with the

1



manner in which illegal drugs are transported, stored, and distributed, the methods of payment for such drugs, the laundering of drug proceeds, and the terminology and coded language used by drug traffickers.

3.      While involved in investigations involving drug trafficking and criminal enterprises, I have communicated extensively with other federal, state, and local law enforcement personnel who specialize or have expertise in this area. Based on my training, experience, and participation in drug trafficking investigations, I know that:

a)      Drug traffickers must maintain at ready access large amounts of cash in order to maintain and finance their ongoing drug business;

b)      Because drug trafficking on the scale revealed in this investigation is frequently a continuing activity which spans many years, because the traffickers inventory of controlled substances fluctuates depending on availability and demand, and because drug traffickers commonly front drugs, or provide them on consignment to their customers, the traffickers must maintain books, receipts, notes, ledgers or some other type of record reflecting such transactions. Drug traffickers and members of criminal enterprises must keep their records in some secure, yet readily accessible, place where they can be used and maintained, such as in homes, offices, places of business, automobiles, safes or safe deposit boxes. Drug traffickers and members of criminal enterprises must keep these records of their illegal activities beyond the time during which controlled substances are actually in their possession, so that they can maintain contact with their criminal associates for future drug transactions, and so that they can keep records of prior transactions for which they might be owed or owe inventory or money;

c)      Drug traffickers and members of criminal enterprises commonly hide

2

controlled substances, drug proceeds, and records of their drug transactions in secure locations, as well as in offices or places of business, garages, or storage buildings. Similarly, the traffickers and members of criminal enterprises have ready access to these items, and attempt to conceal them from law enforcement agencies;

d)    Drug traffickers and members of criminal enterprises often conceal controlled substances, currency, financial instruments, documents relating to financial transactions, precious metals, jewelry, other items of value, and proceeds of drug transactions, all of which constitutes evidence of drug trafficking activities. Additionally, such items constitute evidence of transactions establishing the generation, transfer, concealment, and expenditure of large sums of money made from trafficking in controlled substances.   Drug traffickers maintain these items in secure, yet convenient locations, such as their homes, offices, and places of business, garages, storage buildings, automobiles, and safe deposit boxes;

e)    Drug traffickers and members of criminal enterprises commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses, and telephone numbers for their drug trafficking and money laundering associates. These items are sometimes in code;

f)    Drug traffickers and members of criminal enterprises frequently have photographs and video of themselves, their associates, their property, firearms, and controlled substances, which are usually maintained in their homes, offices and place of business. Such photographs and videos constitute evidence of their drug trafficking and criminal activities, establishing their connections with items of property with each other, and with drugs and firearms;

3



g)      Drug traffickers and members of criminal enterprises involved in importation or transportation of controlled substances from source cities generally possess documentation, such as telephone records, correspondence, shipping receipts, wire transfers, airline ticket receipts, and the like, which pertain to the acquisition, transportation, shipment, or receipt of, or payment for, controlled substances, which is evidence of the traffickers' participation in the illegal drug scheme;

h)      Drug traffickers and members of criminal enterprises often maintain some record of the movement of money, whether it is accomplished by wire or interbank transfer or by a person acting as a courier. Such records, even though they may be in code, are evidence of the traffickers and/or the criminal enterprise member's illegal activities;

i)      Drug traffickers and members of criminal enterprises often use false or fictitious names or corporations or other business entities to launder their drug proceeds and to send shipments of cash or controlled substances through the mail or other delivery services. Banks, both domestic and abroad, are sometimes utilized by traffickers or their agents though which proceeds from their illegal activities are laundered. Funds are frequently transferred between banks and various accounts to conceal their sources and origins.   It is also common to obtain bearer or other negotiable instruments through foreign banks to avoid the necessity of filing currency transaction reports, in this manner concealing the fact of the transaction and the true ownership of the funds. Documents or records of any kind reflecting any connection with any such entity or transaction constitute evidence of the traffickers participation in the illegal scheme;

4



j)      Drug traffickers and members of criminal enterprises frequently utilize a continuing pattern of activities to launder and conceal drug-generated proceeds and assets, which lasts over a period of years.   Drug traffickers use these patterns or schemes to create the appearance of legitimate income so that they can eventually convert the proceeds or assets to themselves or to a nominee under their control.   In this way, the traffickers and members of criminal enterprises can enjoy and use their properties while attempting to conceal their illegal activities, which generated the proceeds or assets;

k)      Courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, which includes trafficking in controlled substances and illegal schemes to conceal drug-generated proceeds;

l)      Drug traffickers and members of criminal enterprises who deal in illegal controlled substances often use cellular telephones to maintain contact with and receive phone and or text messages from their customers, suppliers, and co-conspirators to further their drug distribution activity;

m)      Drug traffickers and members of criminal enterprises often possess and maintain firearms, ammunition and bulletproof vests in their homes to protect their drugs and illegal proceeds. The firearms and ammunition are used in violation of Title 18, United States Code, Section 924(c) and are considered tools of the drug trade; and

n)      In addition, during the course of such residential searches, I have also found items of personal property and or mail that tend to identify the person(s) in residence, occupancy, control, or ownership of the subject premises

**BASIS FOR FACTS CONTAINED IN THIS AFFIDAVIT**

5

3.    Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was either obtained by me personally or provided by a law enforcement officer, who may have had either direct or hearsay knowledge of the statement, to whom I have spoken, or whose report(s) I have reviewed. Similarly, except where otherwise indicated, information resulting from surveillance does not always set forth my personal observations, but rather those observations provided directly or indirectly by, and/or through other special agents and task force officers of DEA or other law enforcement officers who conducted such surveillance. Because this affidavit is submitted for the limited purpose of showing probable cause, I have not set forth each and every fact learned during the course of this investigation. Facts not set forth herein are not being relied upon in reaching my conclusion that the facts provided establish probable cause.

## PURPOSE OF AFFIDAVIT

4.    This Affidavit is being submitted in support of an Application by the United States of America, which seeks search warrants for the following residences described in Attachment A:

**4209 Kelly Street, Unit A, North Charleston, SC**

**24 Mary Street, Charleston, SC**

## THE DRUG TRAFFICKING ORGANIZATION

5.    Since September 2016, the Drug Enforcement Administration (DEA), Homeland Security Investigations (HSI), United States Postal Inspection Service (USPIS), the Charleston County Sheriff's Office (CCSO), North Charleston Police Department and the Beaufort County Sheriff's Office (BCSO) have been involved in the investigation of a drug trafficking organization (DTO) operating in the low country of South Carolina. Based on investigative efforts including statements from confidential sources (CSs), cooperating defendants (CDs), and the interception of

6



TARGET TELEPHONE 3 used by Carlton EDWARDS, the interception of TARGET TELEPHONE 4 used by Keith CHISHOLM, the interception of TARGET TELEPHONE 11 used by Michael HUBBART as well as the interception of a telephone used by David ECCLESTON, I have learned that Carlton EDWARDS receives cocaine and marijuana from David ECCLESTON, a/k/a "the General," and Diane ELLIS and others unknown and utilizes Wayland PARKER and Michael HUBBART to receive the drug laden parcels through their employment with the United States Postal Service (USPS) and FedEx. Michael HUBBART, Matthew JAMES, Joe JEFFERSON, Brandon GLOVER, Diamond FLOYD and others then distribute the drugs in South Carolina.

## **TITLE III INVESTIGATION**

6.      On October 12, 2018, the Honorable Judge Margaret B. Seymour, United States District Judge, District of South Carolina, authorized the interception of wire and electronic communications occurring over telephone number 843-974-7533 (TARGET TELEPHONE 2) and telephone number 347-984-4754 (TARGET TELEPHONE 3), both used by EDWARDS. Monitoring was initiated on October 12, 2018, and was terminated on October 23, 2018. During the intercepted communications, EDWARDS was actively involved in the distribution of cocaine and marijuana from California to South Carolina to HUBBART, JAMES, JEFFERSON and others.

7.      On January 10, 2019, the Honorable Dale S. Fisher, United States District Judge, Central District of California, authorized the interception of wire and electronic communications occurring over telephone number 562-479-4890, used by ECCLESTON.    Monitoring was initiated on January 14, 2019, and was terminated on February 12, 2019. During the intercepted communications, ECCLESTON and EDWARDS were actively involved in the distribution of cocaine and marijuana from California to South Carolina to HUBBART, JAMES, JEFFERSON and other.

7



8.      On February 13, 2019, the Honorable Dale S. Fisher, United States District Judge, Central District of California, authorized the continued interception of wire and electronic communications occurring over telephone number 562-479-4890, used by ECCLESTON. Monitoring was initiated on February 13, 2019, and was terminated on March 14, 2019. During the intercepted communications, ECCLESTON and EDWARDS were actively involved in the distribution of cocaine and marijuana from California to South Carolina to HUBBART, JAMES, JEFFERSON and others.

9.      On June 4, 2019, the Honorable Margaret B. Seymour, United States District Judge, District of South Carolina, authorized the interception of wire and electronic communications occurring over telephone number 843-300-8851 (TARGET TELEPHONE 11), used by Michael HUBBART.   Monitoring was initiated on June 5, 2019 and was terminated on July 4, 2019. During the intercepted communications, ECCLESTON and EDWARDS were actively involved in the distribution of cocaine and marijuana from California to South Carolina to HUBBART, JAMES, JEFFERSON and others.

## LOCATIONS TO BE SEARCHED

### 4209 Kelly Street, Unit A, North Charleston, SC

10.      **4209 Kelly Street, Unit A, North Charleston, SC** is the residence of Brandon GLOVER per the South Carolina Department of Motor Vehicles and used by Matthew JAMES aka "Family" as a place of drug distribution. A subpoena to Dominion Energy for account information as of July 22, 2019 revealed Jessica Glover as the subscriber for utilities, with an open and active account at **4209 Kelly Street, Unit A, North Charleston, SC** with service established on September 20, 2017. Listed on the Dominion Energy account as Jessica Glover's spouse is Brandon GLOVER. Intercepted communications between HUBART and JAMES over TARGET TELEPHONE 11 indicated that **4209 Kelly Street, Unit A, North Charleston, SC** is being used

8



to receive and distribute drugs. Intercepted communications over TARGET TELEPHONE 11 further indicated that HUBBART receives the drugs and then give the drugs to JAMES and GLOVER who would then take them to **4209 Kelly Street, Unit A, North Charleston, SC.**

### 24 Mary Street, Charleston, SC

11.    **24 Mary Street, Charleston, SC** is the residence of Diamond FLOYD. A query of the South Carolina Department of Motor Vehicles revealed that FLOYD provided her address for her driver license as **24 Mary Street, Charleston, SC**. During contacts with the Charleston Police Department, FLOYD provided **24 Mary Street, Charleston, SC** as her residence. A subpoena to Dominion Energy for account information as of July 22, 2019 revealed Eltajaris Carew as the subscriber for utilities, with an open and active account at **24 Mary Street, Charleston, SC** with service established on June 12, 2018. Investigators know Eltajaris Carew as FLOYD's brother and the son of LaShenda Floyd.

### PROBABLE CAUSE

12.    On November 21, 2017, North Charleston Police Department conducted a lawful traffic stop of Bandon GLOVER. During a search of GLOVER and the vehicle, officers recovered a firearm in a holster on GLOVER's leg, marijuana and approximately 3 grams of cocaine that was divided into 7 baggies consistent with drug distribution.

13.    On October 14, 2018, FLOYD was observed fleeing from a white in color Hyundai Sonata bearing SC Tag PYE-548 in the parking lot of 1840 Carriage Lane, Charleston, SC.  As a Charleston Police Department officer approached the parked vehicle, the rear passenger, later identified as FLOYD, fled on foot.  In the rear seat from where FLOYD exited and ran, officers located approximately two pounds of marijuana and a Glock 33 handgun with one round chambered and 15 rounds in the magazine.  As of this date, FLOYD has not been charged in this

9



incident. The Hyundai Sonata in question is registered to LaShenda Floyd at **24 Mary Street, Charleston, SC**.

14.    On January 22, 2019, at approximately 7:35 a.m., ECCLESTON using telephone number 562-479-4890, received an incoming call from telephone number 843-751-0583, a telephone used by EDWARDS. During the intercepted conversation, ECCLESTON told EDWARDS to send him "4 things" because ECCLESTON "has 10 right here." EDWARDS explained that he owed an unidentified man in Florida and that he would put himself last. EDWARDS stated that once he sorted out things with the man in Florida, then he would give "Joe (JEFFERSON) and then give 'Family' (JAMES) his thing." EDWARDS asked ECCLESTON if it was 3 different places, and ECCLESTON explained that "it would be 4 because they would do 3, 3, 2, 2." EDWARDS acknowledged and told ECCLESTON to send "3 to 'Family'" because "Family" owes EDWARDS money. ECCLESTON agreed and directed EDWARDS to tell "Family" to "send the thing." Based on the intercepted communication, my experience in this case and my training, I believe ECCLESTON's request for "4 things" was a request four addresses to ship four parcels containing drugs.

15.    On February 25, 2019, at approximately 7:21 a.m., ECCLESTON, using telephone number 562-479-4890 received two incoming text messages from telephone number 786-860-1185, TARGET TELEPHONE 13, used by Matthew JAMES a/k/a "Family." The first text message listed the following address:

Mya White
4209 Kelly Street, Unit A
North Charleston, SC 29405

The second incoming text message ECCLESTON received from telephone number 786-860-1185, TARGET TELEPHONE 13 used by JAMES, a/k/a "Family" read:

"Fam."

10



16.    Based on the intercepted communication, my experience in this case and my training, I believe that JAMES a/k/a "Family" had communicated with EDWARDS who instructed JAMES a/k/a "Family" to provide ECCLESTON with an address to ship a drug-laden parcel to JAMES a/k/a "Family" provided the Kelly Street address as well as a follow up text message identifying himself as "Fam" (Family).

Following these 2 incoming text messages from JAMES a/k/a "Family," on February 25, 2019, at approximately 7:22 a.m., ECCLESTON, using telephone number 562-479-4890 made an outgoing call to telephone number 786-860-1185, TARGET TELEPHONE 13, used by JAMES a/k/a "Family." During the intercepted conversation, ECCLESTON identified the user of telephone number 786-860-1185, TARGET TELEPHONE 13 as "Family." ECCLESTON then confirmed receipt of the address and explained that he would "jump on it today." Based on the intercepted communication, my experience in this case and my training, I believe that ECCLESTON was confirming that the shipment of drugs to JAMES a/k/a "Family" was being prepared immediately.

17.    On February 25, 2019, investigators confirmed that all four addresses provided by HUBBART, JEFFERSON and JAMES, a/k/a "Family" exist, however the Applied Science business, listed on Parcel 4, was a vacant building that had previously been occupied by the company. Furthermore, Limehouse Produce Company, listed on Parcel # 3, and AT&T Southeast, listed on Parcel # 2, are located adjacent to each other even though they are listed on separate streets. The Kelly Street address, listed on Parcel # 1, is located on a dead end street. All four addresses are located on a FedEx delivery route that HUBBART frequently travels during his normal course of business.

18.    Later in the morning on February 25, 2019, agents established surveillance and at approximately 11:50 a.m. identified a Silver Nissan Maxima registered to Delroy ELLIS parked

11



at JNC Shipping and Wireless located at 8013 Archibald Avenue in Rancho Cucamonga, CA.

A subject believed to be ELLIS was observed leaving JNC Shipping and Wireless with what

investigators identified as multiple, pre-printed shipping labels. ELLIS then traveled to a

commercial business park where he entered an unmarked commercial unit within the business

park. After some time inside, ELLIS was observed departing the unmarked commercial unit with

2 parcels, which he placed, into his vehicle before returning inside and exiting with 2 more

parcels that he also placed into his vehicle. ELLIS was then observed as he traveled to a FedEx

shipping center located at 11334 E. 4th Street, Suite 102 in Rancho Cucamonga, CA and dropped

off 2 of the parcels before he travelled to a second FedEx shipping center located at 3371 E.

Francis Street in Ontario, CA and dropped off 2 additional parcels. Investigators were able to

visually observe 2 of the parcels dropped off by ELLIS that displayed the following shipping

information:

| | |
|---|---|
| 4620 3515 6420 | 4620 3515 6453 |
| Mya White | Stephanie Clancy |
| 4209 Kelly Street, Unit A | Applied Science |
| North Charleston, SC 29405 | 1890 Milford St |
| | N. Charleston, SC 29405 |

19.     Following the surveillance, ECCLESTON, using telephone number 562-479-4890

attempted to contact telephone number 786-860-1185, TARGET TELEPHONE 13, used by

JAMES a/k/a "Family", but was unsuccessful.   JAMES a/k/a "Family" returned

ECCLESTON'S calls, and ECCLESTON stated that he had sent something and asked if JAMES

a/k/a "Family" saw it.   JAMES a/k/a "Family" replied that he had been riding his motorcycle

and had not but that he would check it. The call ended, and moments later, JAMES a/k/a

"Family" called ECCLESTON back and confirmed that he had received what ECCLESTON had

sent.

12



20.    ECCLESTON, using telephone number 562-479-4890 was then contacted by HUBBART from telephone number 843-300-8851, TARGET TELEPHONE 11. ECCLESTON answered, "Yes sir?" HUBBART replied, "Hey, what's up General?" ECCLESTON asked, "How you doing." HUBBART stated, "I'm alright." ECCLESTON stated, "Um, I send three things to you. Did you see that?"   HUBBART replied, "Yeah, I got 'em." ECCLESTON stated "Alright. Look, check them and make sure they are ok. Ok?" HUBBART agreed, "I got 'ya." A short time later, HUBBART, using TARGET TELEPHONE 11, responded to ECCLESTON with a text message that read, "Yeah they good to go." ECCLESTON then responded by sending HUBBART to telephone number 843-300-8851, TARGET TELEPHONE 11, a text message that read, "Kool." Based on the intercepted communication, my experience in this case and my training as well as the intercepted communications that followed and are detailed below, I believe that ECCLESTON was informing HUBBART that he had sent 3 drug laden parcels to the 3 addresses that HUBBART had previously provided ECCLESTON. I believe that those 3 parcels were later identified as Parcel #1, #2 and #3.

21.    Based on the intercepted conversations, agents located the 4 parcels and intercepted the parcels at the FedEx sorting facility located in Memphis, Tennessee on February 26 and 27, 2019. The information listed on the 4 parcels follows:

### PARCEL # 1

Tracking #: 4620 3513 6420

From:  Shipping Department
JNC Shipping and Office Supplies
8013 Archibald Ave
Rancho Cucamonga, CA 91730


To:    Mya White
4209 Kelly Street, Unit A
North Charleston, SC 29405

13

**PARCEL # 2**

Tracking #: 4620 3513 6431

From:  Shipping Department
JNC Shipping and Office Supplies
8013 Archibald Ave
Rancho Cucamonga, CA 91730

To:    Nelson Ramone
       AT&T Southwest
       2600 Meeting Street Rd
       North Charleston, SC 29405

**PARCEL # 3**

Tracking #: 4620 3513 6442

From:  Shipping Department
JNC Shipping and Office Supplies
8013 Archibald Ave
Rancho Cucamonga, CA 91730

To:    Matthew Fraiser
       Limehouse Produce Company
       2660 Carner Ave
       North Charleston, SC 29405

**PARCEL # 4**

Tracking #: 4620 3513 6453

From:  Shipping Department
JNC Shipping and Office Supplies
8013 Archibald Ave
Rancho Cucamonga, CA 91730

To:    Stephany Clancy
       Applied Science
       1890 Milford St

14

North Charleston, SC 29405

22.    The 4 parcels remained unopened and were secured for shipment to Charleston, SC. The tracking information in the FedEx system available to the public was updated by FedEx to reflect that the 4 parcels had arrived at the FedEx Memphis sorting facility and no delivery information was available. However, the internal FedEx system reflected that the 4 parcels were held by security in Memphis, Tennessee for violation of FedEx shipping policy.

23.    On February 26, 2019, EDWARDS called ECCLESTON on telephone number 562-479- 4890. During the intercepted conversation, EDWARDS told ECCLESTON that the "X-man," referring to HUBBART, had said that the "boogie man held the things from that side of the road." Based on the intercepted communication, my experience in this case and my training, I believe that HUBBART contacted EDWARDS and informed him that the 4 parcels had been intercepted by law enforcement, which I believe he referred to as the "boogie man." EDWARDS then contacted ECCLESTON and advised him the same.

24.    A short time later on February 26, 2019, ECCLESTON, using telephone number 562-479-4890 called EDWARDS and said that he had seen it that morning and saw that it was in "Mem." ECCLESTON then explained that, "he said that was where they held onto it." ECCLESTON then explained to EDWARDS that, "he can see more" than ECCLESTON. Based on the intercepted communication, my experience in this case and my training, I believe that ECCLESTON was tracking the 4 parcels and was aware that the 4 parcels had arrived in Memphis, Tennessee but that HUBBART has access to internal FedEx systems that indicated that the 4 parcels had been seized.

25.    Later in the day, ECCLESTON and EDWARDS communicated again and included Diane ELLIS in the conversation. EDWARDS and ELLIS referred to ECCLESTON as

15



"the General" and explained that they had also sent 4 parcels from California that contained "pop." Based on previous intercepted communications of TARGET TELEPHONE 3, my experience in this case and my training, I believe "pop" and "popcorn" are code for high-grade marijuana. EDWARDS detailed that he had sent 2 to "Family" and 2 to "X-Man" and confirmed that everything with those 4 parcels was good and the he had confirmed with Matthew JAMES a/k/a "Family" and HUBBART. EDWARDS told ECCLESTON that he spoke to HUBBART about what happened to the parcels sent by ECCLESTON, and HUBBART explained that, "the things were up the road but something did not sound right." EDWARDS said that he instructed HUBBART to "get to" his (HUBBART's) "source" and HUBBART did, to which EDWARDS told ECCLESTON that HUBBART can "see things that they cannot see." EDWARDS described that HUBBART told him "the lady told him (HUBBART) that the security took them off of the thing and placed them to the side." EDWARDS explained that he told HUBBART to leave the parcels alone and to watch what happens. EDWARDS said he told HUBBART that the greatest thing was that "no one was in trouble" and "no one was going to anybody" and the one person that was in trouble was "Family" because his ("Family") was a "straight thing" so "they[1] can go and talk to people." ECCLESTON acknowledged, and EDWARDS stated "with the other 3 they cannot go and talk to anyone." The two continued detailed conversation about the movement of the 4 parcels and the seizure by law enforcement. At the end of the intercepted conversation, EDWARDS instructed ECCLESTON to send the tracking information to Diane ELLIS and she would do additional research.

26.    On February 26, 2019, HUBBART, using telephone number 843-300-8851, TARGET TELEPHONE 11, sent the following image to ECCLESTON, using telephone number

---

1 I believe EDWARDS was referring to law enforcement.

16

562-479-7890:



Based on the intercepted communication and information from investigators that perform parcel interdiction at the FedEx facility in North Charleston, SC, I believe that HUBBART was utilizing another FedEx employee to gain information about the 3 drug laden parcels sent by ECCLESTON. The image sent by HUBBART is a photograph of a computer screen identified at the North Charleston, SC FedEx facility and the information was obtained through a proprietary site used by FedEx and not available to the public. Based on this intercepted communication and later communications detailed below that occurred between ECCLESTON and EDWARDS as well as ECCLESTON and ELLIS, I believe that HUBBART was informing ECCLESTON that the parcels had been seized by law enforcement at the Memphis, TN FedEx facility.

27.    On February 27, 2019, ECCLESTON using telephone number 562-479-4890, sent

17

the following image to Diane ELLIS at telephone number 516-416-0628:



The label is the same as the label on Parcels # 1 intercepted at the FedEx sorting facility in Memphis, Tennessee.

28.     On February 28, 2019, Parcels # 1, # 2, # 3, and # 4 arrived in Charleston, South Carolina. Investigators set Parcel # 1 in a conference room along with multiple other parcels known not to contain narcotics. CCSO certified K9 handler Detective J. White introduced CCSO K9 Bostic to the conference room, and K9 Bostic alerted to the presence of narcotics odor within Parcel #1. CCSO K9 Bostic did not alert on any other parcels in the room. This process was repeated for Parcels # 2, # 3, and # 4 except during each search, the different parcels were placed in a different area of the room to avoid contamination.   K9 Bostic also alerted to the presence of narcotics odor within Parcels # 2, # 3, and # 4.

29.     Later on the evening of February 28, 2019, CCSO Detective White visited the FedEx distribution center located in North Charleston, South Carolina. This is the facility that HUBBART reports to and operates from. Detective White observed a workstation within the facility that had the same post it note on the bottom right of an HP computer monitor that was



pictured in the image sent to ECCLESTON from HUBBART using TARGET TELEPHONE 11.

30.    On March 1, 2019, search warrants were issued in United States District Court, District of South Carolina for Parcel # 1, # 2, # 3 and # 4. Upon executing the search warrants, agents discovered each parcel contained a box built of "luan" plywood. Agents opened the plywood box and found packing peanuts and bricks of cocaine taped together with brown packing tape. Parcel # 1 contained 2 kilograms of cocaine while Parcel # 2, # 3 and # 4 each contained 3 kilograms of cocaine. Each of the 11 kilograms of cocaine seized was identically wrapped / packaged and each had the same mustang horse imprinted on the kilograms.

31.    On May 10, 2019, video at a US Post Office in the Charleston, SC area captured JAMES and GLOVER obtaining multiple money orders. GLOVER could be seen counting a large amount of US currency. Based on intercepted communications and my experience with this investigation, I know that this DTO uses money orders purchased with drug proceeds to pay for drug shipped from California to South Carolina.

32.    On June 4, 2019, FLOYD was stopped in downtown Charleston driving a Volkswagen CC that fled from law enforcement on June 11, 2019. During the stop on June 4, 2019, FLOYD was in possession of a Glock 26 handgun with an extended magazine containing 24 rounds of ammunition as well as a small amount of marijuana in which FLOYD was not charged.

33.    On June 7, 2019 at approximately 12:07 p.m., HUBBART, using TARGET TELEPHONE 11, received an incoming call from 928-529-9844, a telephone used by Carlton EDWARDS.   The following is a transcript of the intercepted conversation:

EDWARDS:   I'm on "Family" side, outside the garage where (U/I) "Family." So anytime you want you can swing by.

HUBBART:   You say you over there now?

19

EDWARDS:   Yeah sure.

HUBBART:   Alright, I'll make my way over there now.

EDWARDS:   Alright, I'm at the garage.   I'm at the garage across the street. That's the mini mart right now, we're not in the hole, we are across the garage.   So we're gonna go over there back that hole.   Ok?

HUBBART:   I got you.

EDWARDS:   Alright.

HUBBART:   Alright.

Based on the intercepted communication, I believe that EDWARDS is referencing a automobile repair garage operated by JAMES' relatives that is located across Rivers Ave from Kelly Street, North Charleston, SC. During this investigation, investigators have observed JAMES visit the garage on Macon Street on the opposite side of Rivers Avenue from Kelly Street prior to visiting **4209 Kelly Street, Unit A, North Charleston, SC**.

34.    On June 10, 2019 at approximately 5:45 PM, the City of Charleston camera room, using City of Charleston Safety Cameras, captured FLOYD in the area of Allway Street and Flood Street.   The City of Charleston Safety Cameras captured FLOYD and another individual enter a Jeep Cherokee bearing SC Tag RBJ-186 after the Jeep pulls up to them on the street. FLOYD, who was wearing a backpack, entered the rear of the Jeep, behind the driver.   FLOYD was further observed removing her backpack and then passing I believe to be, based on my training and experience, approximately one pound of marijuana to the driver of Jeep.





35.    On June 11, 2019, at 12:36 pm, an incoming call was received on TARGET

TELEPHONE 11 from 773 712-4392 a telephone being used by Matthew JAMES a/k/a

"Family".  Toward the end of this intercepted call, JAMES asked HUBBART "What time you

gonna be down that road?"  HUBBART responded with "I'm on East Montague right

now." JAMES then asked HUBBART "You swinging through Kelly way or do I need to come grab them." Based on the intercepted communication, I believe "Kelly" refers to 4209 Kelly Street, Unit A, North Charleston, SC and "grab them" is a reference to JAMES getting the two FedEx parcels from HUBBART. HUBBART told JAMES "They got me all around today, they don't have me back on my route today." HUBBART also told JAMES, "I'm about to be in Park Circle in a second." JAMES replied with, "I'm gonna get myself together and roll."

At 1:45 pm, HUBBART, using TARGET TELEPHONE 11 placed an outgoing call to 773-712-4392, a telephone used by JAMES. During this intercepted call, HUBBART told JAMES "I'm in the little roundabout thing.[2]  HUBBART then went on to tell JAMES "matter of fact...you wanna go to that little quick mart right there by the track?" JAMES stated "ok".

36.    At approximately 1:48 pm, investigators observed HUBBART driving a FedEx truck pull into the parking lot at the quick mart which I believe to the quick mart that was referenced by HUBBART. HUBBART exited the driver's side door of the Fed Ex truck and walked to a silver BMW 745 series bearing SC registration 8112MW. The SC registration is recorded as 8112MW on a 2004 BMW 745LI, registered to Matthew JAMES at 204 Louie Lane, Ladson, SC. Investigators then observed HUBBART open the trunk of the silver BMW and place two Fed Ex packages into the trunk and then close the trunk of the BMW. HUBBART walked back to the Fed Ex truck, got into the driver's side and left the parking lot of the quick mart. Surveillance was not maintained on HUBBART once he left the quick mart. At approximately 1:50 pm, just after HUBBART left the parking lot, investigators observed JAMES walk out of the quick mart to the driver's door of the BMW. Investigators observed JAMES open the driver's door and walk to the trunk of the BMW. JAMES opened the trunk, looked at

---

2 I believe HUBBART was referencing Park Circle area of North Charleston.

22

the boxes that HUBBART had placed into the trunk and then shut the trunk. Investigators then observed JAMES get into the driver's seat of the BMW and leave the parking lot of the quick mart store. Surveillance was maintained on JAMES as he left the quick mart.

37.    JAMES was followed down Montague Street and into the Park Circle area of North Charleston. At approximately 1:52 pm, JAMES, driving the BMW pulled up to the side of the Fed Ex truck HUBBART was driving and the two of them engaged in a quick conversation before JAMES drove away in the BMW. At approximately 1:58 pm, investigators observed JAMES pull the BMW into the dirt road / driveway at **4209 Kelly Street, North Charleston, SC**. JAMES exited the vehicle and engaed in conversation with an unknown person who was standing at the front of the residence at **4209 Kelly Street, Unit A, North Charleston, SC**.

38.    At approximately 2:34 PM, investigators observed JAMES walk down Kelly Street while talking on a cellular telephone. At approximately 2:38 PM, investigators observed a Jeep Grand Cherokee bearing SC Tag RBJ-186 drive down Macon Street and turn onto Kelly Street. Because Kelly Street itself is located off of a dead end street and **4209 Kelly Street, Unit A, North Charleston, SC** is located at the dead end of Kelly Street, surveillance is very difficult without JAMES and others knowing that they are under surveillance. There are also only two residences located on Kelly Street to include **4209 Kelly Street, North Charleston, SC**. When the Jeep departed and **4209 Kelly Street, North Charleston, SC** a short time later, a lawful traffic stop of the Jeep was initiated. The Jeep fled from the traffic stop and crashed. The driver was apprehended and found to be in possession of approximately (4) four ounces of marijuana. At approximately 2:45 PM, law enforcement officers attempted a traffic stop of a white in color Volkswagen CC bearing SC Tag RDW-805 on Rivers Avenue near Verde Street in North Charleston after observing it drive onto Kelly Street and leave a short time later. The

23



Volkswagen CC fled from the traffic stop and into the City of Charleston where the North

Charleston Police Department terminated the pursuit on behalf of public safety. Investigators

learned that the Volkswagen CC bearing SC Tag RDW-805 is registered to LaShenda Floyd at

24 Mary Street, Charleston, SC. Investigators know LaShenda Floyd to be the mother of

Diamond FLOYD. A short time later on the day that the Volkswagen CC fled from law

enforcement, FLOYD boasted from her Facebook page about getting away from law

enforcement. FLOYD's Facebook page "Diamond Dimebag" boasted on June 11, 2019 at

approximately 3:25 PM that, "The way I just buss naughty ass up (3 laughing emoji's) y'all was

not thinging me".



39.     On June 18, 2019 at approximately 10:36 a.m., HUBBART, using TARGET

TELEPHONE 11, received an incoming call from 305-849-7822, a telephone used by Matthew

JAMES.  The following is a transcript of the intercepted conversation:

JAMES:   That shit had came through?

HUBBART:   Yeah, yeah, yeah.  It came through.

JAMES:   Alright.  So what time you trying to link up?

HUBBART:  Um, probably in like the next hour.  I about to head back to North Charleston in about a couple more minutes.

JAMES:  That will work then, cause I just get up U/I.

HUBBART:  Alright.

JAMES: Alright, that's a bet.

HUBBART: Alright.

40.    At approximately 12:01 p.m., HUBBART, using TARGET TELEPHONE 11,

placed an outgoing call to 305-849-7822, a telephone used by Matthew JAMES. The following is

a transcript of the intercepted conversation:

HUBBART: Yo!

JAMES: Whats up brah?

HUBBART: Ain't nothing. You want me to get this back in to your people? I got a delivery on Macon right now.

JAMES: Um shit, you bout to drop them off now?

HUBBART: I mean I can, I was just saying, cause I mean, I still got north Charleston but I got a delivery back here, you know what I'm saying, for one of these houses on Macon.

JAMES: Oh yeah, go ahead and drop them off. I'm about to call him right now.

HUBBART: Alright.

JAMES: Alright

On the same day, June 18, 2019, at approximately 1:55 PM, investigators observed a gray

in color Volkswagen Passat in the area of **4209 Kelly Street, North Charleston, SC**. This is the

same location where the Jeep and Volkswagen CC and Jeep Grand Cherokee were observed

before the vehicle pursuits the prior week. The Volkswagen Passat was observed to have SC Tag

QNN-392.   The Volkswagen Passat is registered to FLOYD's mother, LaShenda Floyd at **24**

**Mary Street, Charleston, SC**.   After leaving the area of 4209 Kelly Street, law enforcement

officers observed the vehicle travel to the area of Verde Street.  Investigators further observed

the driver exit the driver door of the Passat and investigators positively identified the driver as

FLOYD.

41.    On June 20, 2019 at approximately 12:35 PM, TFO Jarrell, observed the

Volkswagon Passat, registered to FLOYD, parked in the driveway of **24 Mary Street,**

**Charleston, SC**.  On June 25, 2019, law enforcement officers began surveillance at **24 Mary**

**Street, Charleston, SC**.  At approximately 1:25 pm, Det. Choate of the Charleston Police

Department observed an unidentified black male exit the residence with a large bag.  Det.

Choate observed the unidentified male meet with a black in color Chevrolet Malibu bearing SC

Tag LRC-183 driven by a black male.  Det. Choate observed the male that exited **24 Mary**

**Street, Charleston, SC** remove what appeared to be, through Det. Choate's training and

experience, one pound of marijuana and hand it over to the driver of the Malibu before the

Malibu drove away.  FLOYD was later observed at **24 Mary Street, Charleston, SC** where she

was observed leaving in a black in color Nissan Maxima bearing FL Tag KCVQ56.  FLOYD

drove only a few blocks while conducting counter surveillance tactics before going back to **24**

**Mary Street, Charleston, SC**.  Upon exiting the Maxima at **24 Mary Street, Charleston, SC**,

FLOYD proceeded to approach Charleston Police Department Sgt. Brandon Ratliffe who was

conducting surveillance.  FLOYD began violently banging on the side of Sgt. Ratliffe's vehicle

while yelling expletives and asking who he was and what he was doing.  FLOYD then stood in

the street causing vehicles to slow down so that she could look inside at the occupants of the

oncoming traffic.

42.    On June 27, 2019, officers with the Charleston Police Department observed

FLOYD in the area of 44 Flood Street where those officers know FLOYD to be on trespass

notice for the location due to prior illegal activities.  Upon attempting to make contact with

FLOYD, she fled into 44-A Flood Street, Charleston, SC.   The homeowner stated that permission to enter the residence to FLOYD was not given and the homeowner allowed the officers to search the residence.   Upon entering the residence officers located FLOYD who was the sole person inside of the apartment. Officers further located a clear plastic baggie floating in the toilet and (18) individual baggies of marijuana weighing approximately 23 grams in the trash can next to the toilet.   FLOYD provided a post Miranda statement in which she stated that the marijuana was hers and that she placed it in the trash because she knew it was packaged for sale.

43.    On July 11, 2019, Brandon GLOVER and Matthew JAMES a/k/a "Family" were indicted by a federal grand jury in Charleston, South Carolina for violations of Title 21 U.S.C. 841 and Title 18 U.S.C. 924(c).   GLOVER is the resident at **4209 Kelly Street, Unit A, North Charleston, SC** per the South Carolina Department of Motor Vehicles.

## CONCLUSION

44.    I believe that JAMES a/k/a "Family," GLOVER and FLOYD are drug traffickers and they maintain residences located at the aforementioned addresses. I believe that drug traffickers keep drugs, drug scales, ledgers, receipts, and drug proceeds at their respective residences/businesses along with the items described in Attachment B and actively use their residences/businesses as a place to conduct drug transactions or to store drugs and or firearms. Based on this information, I have reason to believe that JAMES a/k/a "Family," GLOVER and FLOYD, have used, and continue to use, the above listed addresses to commit violations of federal laws, specifically Title 21, United States Code, Section 841(a)(1) and Title 21, United States Code, Section 846. These violations include the unlawful possession of, possession with intent to distribute, the distribution of controlled substances, and conspiracies and attempts to do the same, in violation of Title 21, United States Code, Section 841(a)(1) and Title 21 United States Code 846. I believe those items listed in Attachment B, to include drug ledgers, cellular phones, phone

27



records, and records pertaining to this conspiracy, and/or U.S. currency will be located at **4209 Kelly Street, Unit A, North Charleston, SC** and **24 Mary Street, Charleston, SC** and described in Attachment A.

AUSA Jamie Schoen has reviewed this Affidavit.

Respectfully submitted,

Jason Jarrell
DEA Task Force Officer

Subscribed and sworn to before me on July 23, 2019

BRISTOW MARCHANT
UNITED STATES MAGISTRATE JUDGE

28